UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.

D-5 WILLIAM T. PHILLIPS,

      Defendant.
_____/

Criminal Case No. 2:17-cr-20632-5
Civil Case No. 2:19-cv-12222

HONORABLE STEPHEN J. MURPHY, III

UNITED STATES OF AMERICA,

      Plaintiff,

v.

D-9 WILLIAM T. PHILLIPS,

      Defendant.
_____/

Criminal Case No. 2:18-cr-20128-9
Civil Case No. 2:19-cv-12221

HONORABLE STEPHEN J. MURPHY, III

**OMNIBUS OPINION AND ORDER**

Defendant William T. Phillips pleaded guilty to one count of child exploitation enterprise in violation of 18 U.S.C. § 2252(A)(g). ECF 153, PgID 2303.[1] The Court sentenced him to a below-Guideline sentence of 396 months' imprisonment concurrent to a sentence he received in a separate criminal case. *Id.* at 2304. In the other criminal case, Defendant also pleaded guilty to one count of child exploitation enterprise in violation of § 2252(A)(g). *United States v. Phillips*, No. 2:18-cr-20128-9, ECF 79, PgID 1003 (E.D. Mich. July 19, 2018). There, the Court sentenced Defendant

---

[1] All docket citations are to filings on the 17-cr-20632 docket unless otherwise noted.

1

to 396 months' imprisonment to run concurrent to the sentence he received in the 2:17-cr-20632-5 case. *Id.* at 1004. In other words, Defendant pleaded guilty to two child exploitation enterprises, and was sentenced to serve 396 months in prison for both crimes.

Defendant, through counsel,[2] timely moved to vacate his sentences under 28 U.S.C. § 2255. ECF 174 (under seal); *Phillips*, No. 2:18-cr-20128-9, ECF 173 (E.D. Mich. July 29, 2019). The Government opposed the motions. ECF 209; *Phillips*, No. 2:18-cr-20128-9, ECF 190 (E.D. Mich. November 21, 2019) (both under seal). And Defendant later moved to amend the § 2255 motions. *Phillips*, No. 2:18-cr-20128-9, ECF 205 (E.D. Mich. April 7, 2020).[3] The Government also opposed the motion to amend. ECF 240; *Phillips*, No. 2:18-cr-20128-9, ECF 209 (E.D. Mich. May 8, 2020).

After the Court withdrew the § 2255 motions, ECF 252, Defendant appealed, ECF 268. Based on the parties' request, the Sixth Circuit remanded the § 2255 motions for the Court to consider the merits. *Phillips v. United States*, Nos. 21-1374/1375, ECF 26 (6th Cir. May 20, 2022) (order). The Sixth Circuit issued the mandate on July 12, 2022. *Phillips*, Nos. 21-1374/1375, ECF 28 (6th Cir. July 12, 2022). For the following reasons, the Court will deny Defendant's motions.[4]

---

[2] Defendant's counsel changed while the § 2255 motion was unresolved. ECF 250, PgID 3521; ECF 254.
[3] Defendant's motion to amend appears only on the 2:18-cr-20128 docket. Because Defendant's § 2255 motion is the same for both criminal convictions, the Court will pass over the filing technicality and construe the request as a motion to amend both § 2255 motions.
[4] Based on the parties' briefing, the Court will resolve the motions on the briefs without a hearing. *See* Fed R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2).

**BACKGROUND**

Defendant was part of two criminal groups that preyed on young girls through chatrooms and coerced them to produce child pornography. *See generally United States v. Wright*, No. 2:18-cr-20302-1, 2021 WL 2823119 (E.D. Mich. July 7, 2021) (Murphy, J.); *United States v. Eisley,* No. 2:17-cr-20632-01, 2020 WL 3469181 (E.D. Mich. June 25, 2020) (Murphy, J.). The Government called the two groups "the Skype Group" and "the Bored Group." ECF 157, PgID 2382 (under seal) ("If the Skype Group is [the] junior varsity baseball team, the Bored Group was the varsity team. They are more dangerous[,] and their offense conduct is more serious.").[5]

At Defendant's plea hearing, his counsel explained that she spoke to Defendant twice that week and Defendant was competent to plead guilty. ECF 162, PgID 2606 (under seal). Defendant confirmed that he had "discussed [his] case completely with" his trial counsel and "carefully considered her advice." *Id.* at 2606–07 (under seal). The Court then explained that the plea deal contained an appeal waiver and detailed when Defendant's right to appeal would be considered waived. *Id.* at 2608 (under seal). Defendant affirmed that he understood the waiver. *Id.* at 2608–09 (under seal). The Government then repeated the details of the appeal waiver to the Court. *Id.* at 2615 (under seal). Defendant agreed with the Government's reading of the waiver. *Id.* at 2615–16 (under seal). Defendant later confirmed that his "attorney fully explained the entire agreement to [him] before [he] signed it," and that he wanted to

---

[5] The Government indicted the Skype Group Defendants in case number 2:17-cr-20632 and the Bored Group Defendants in case numbers 2:18-cr-20128 and 2:18-cr-20302.

continue with the guilty plea. *Id.* at 2616 (under seal). In the end, Defendant pleaded guilty. *Id.* at 2618 (under seal).

The Court consolidated Defendant's sentencings for both criminal cases at his request. ECF 157, PgID 2367 (under seal). As Defendant's counsel put it, "it's to his benefit to do so in terms of the criminal history points." *Id.* (under seal).

At the sentencing hearing, the Court mentioned that victim impact statements were presented a day earlier at sentencings for co-Defendants in the 2:17-cr-20632 case, but the Court declined to expand on the statements. *Id.* at 2369 (under seal); *see also* ECF 158 (sentencing transcript); ECF 163 (victim impact statements attached to the Government's under seal sentencing memorandum).

Defendant's counsel first contrasted Defendant's conduct from the conduct of other co-Defendants. ECF 157, PgID 2370–71 (under seal). His counsel also went through how much cooperation Defendant provided, specifically grand jury testimony, that led investigators to indict co-Defendants who had more senior roles in the criminal enterprises. *Id.* at 2371–72, 2374 (under seal). Beyond that, Defendant had assisted investigators from the day he was arrested. *Id.* at 2372–73 (under seal). His counsel also pointed out how Defendant had less child pornography on his computer than other co-Defendants. *Id.* at 2373–74 (under seal). His counsel then pivoted to discuss Defendant's strong support group of friends and family who had aided his early rehabilitation efforts. *Id.* at 2374–75 (under seal).

After Defendant spoke to the Court, the Government moved to incorporate the victim statements and the "in camera statement from a father of a parent as to []

[D]efendant that the Court ha[d] heard." *Id.* at 2380 (under seal). The Government then agreed that Defendant had provided "significant" cooperation. *Id.* at 2380–81 (under seal). But the Government disagreed about why Defendant possessed less child pornography on his computer than other co-Defendants; Defendant was more skilled in wiping software and not saving child pornography. *Id.* at 2383–84 (under seal).

The Government then emphasized Defendant's extreme criminal conduct. In brief, Defendant was "a hunter and a looper as well as a talker." *Id.* at 2386 (under seal). He "was specifically in charge . . . of getting girls into the [chatroom] so that they could be targeted for sexual activity." *Id.* (under seal). "He specifically hunted Minor Victim 1 in the Bored Group or Minor Victim 12 in the Skype Group"; he convinced the 14-year-old girl that he was a 17-year-old boy and she ultimately "engage[d] in sexual activity [on webcam] numerous times because of [Defendant]." *Id.* (under seal). Defendant also convinced an 11-year-old girl victim that he was a 17-year-old boy. *Id.* at 2386–87 (under seal). She ended up cutting her wrists and was suicidal. *Id.* at 2387 (under seal). Despite those girls being only two out of many victims, the Government believed that Defendant should receive a departure 360-month prison sentence (from a restricted Guideline-range of life in prison) because of his cooperation. *Id.* 2387–88 (under seal).

And Defendant did face a Guideline sentence of life imprisonment. *Id.* at 2367, 2389 (under seal). The Court granted the Government's motion to depart from the Guideline sentence under the United States Sentencing Guidelines § 5K1.1. *Id.* at

5

2389 (under seal). The Court then discussed the 18 U.S.C. § 3553(a) factors and Defendant's cooperation. *Id.* (under seal).

The Court first assessed the seriousness of the criminal cases and how other co-Defendants already received more severe sentences. *Id.* (under seal). And the Court recalled that Defendant was "among the most culpable of the [Defendants]." *Id.* (under seal). But the Court determined that imposing a 480-month prison sentence—like the Court imposed on a co-Defendant—would be too harsh given the circumstances. *Id.* at 2389–90 (under seal). And the Court found that Defendant deserved credit "for the substantial assistance that he provided in identifying" and "bringing in eight people in the [Bored] group." *Id.* at 2390 (under seal). The Court was also "taken greatly with the family support, the letters[,] and especially the involvement of [Defendant's] mother" who was "quite committed to the wellness of her son." *Id.* (under seal).

But the Court conceded that the present sentencing was "one of the rare moments" when the Court could not go along with the Government's 360-month recommendation because the Court thought the departure was "too steep." *Id.* (under seal). The Court then balanced how much time Defendant should receive for his cooperation. *Id.* (under seal). The Court noted that Defendant should receive "more consideration than [a co-Defendant] got for his information that led to the prosecution of many [other co-Defendants]." *Id.* (under seal). For that reason, seven years of credit would "incentivize other people to cooperate in the future, [and would] reward [Defendant] for the work that he did"; at the same time, it would serve to "penalize,

6

punish, [and] keep safe people who [] are subject and victim to this behavior that many people would probably feel there should be no release [] for." *Id.* at 2390–91 (under seal).

To conclude, the Court advised that it had weighed the sentencing decision "for a couple of weeks now" and that a 396-month prison term would best balance the "criminal activity in two cases involving numerous [D]efendants and victims along with the significant cooperation and rehabilitation efforts that [Defendant] has" done. *Id.* at 2391 (under seal). At the end of the hearing, the Court reminded Defendant that his plea agreement included an appeal waiver and that "[t]hose waivers are usually enforceable. If you don't believe yours is, you can take that up directly with the Court of Appeals." *Id.* at 2395 (under seal).

In Defendant's motion to vacate, he raised two grounds of ineffective assistance of counsel. ECF 174, PgID 2749–52 (under seal). In the motion to amend, he sought to include another ineffective assistance of counsel claim and a due process claim. *Phillips*, No. 2:18-cr-20128-9, ECF 205-1, PgID 3588; ECF 205-2, PgID 3601 (E.D. Mich. April 7, 2020). Defendant submitted no signed declaration to support either of the motions. *See generally* ECF 174; *Phillips*, No. 2:18-cr-20128-9, ECF 205 (E.D. Mich. April 7, 2020).

In the Government's response to the § 2255 motion, Defendant's trial counsel, Ms. Lisa Dwyer, submitted a signed declaration under the penalty of perjury

7

detailing her discussions with Defendant.[6] ECF 209-2 (under seal). She explained that "[a]t no time after [Defendant's] sentencing hearing . . . did [Defendant] or any other individual acting on his behalf ask [her] to file a notice of appeal to initiate a direct appeal in this matter." *Id.* at 3124 (under seal). And "[e]ach time [she] met with [Defendant]," she discussed the consequences of his plea deal and that he could not appeal the sentence if it was below-Guidelines. *Id.* at 3124–26 (under seal). She then listed thirteen dates that she met with Defendant to discuss the appeal waiver and plea issues. *Id.* at 3125 (under seal). Last, Defendant's mother "never discussed the filing of a notice of direct appeal, [or] instructed that [she] file a notice." *Id.* at 3127 (under seal).

## LEGAL STANDARD

A defendant sentenced by a federal court may seek to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255. The statute provides four grounds for claiming relief: "(1) that the sentence was imposed in violation of the Constitution or [federal] laws, (2) that the [C]ourt [lacked] jurisdiction to impose [the] sentence, (3) that the sentence was in excess of the maximum authorized by law, and (4) that the sentence is otherwise subject to collateral attack." *Hill v. United States*, 368 U.S. 424, 426–27 (1962) (quoting 28 U.S.C. § 2255) (internal quotation marks omitted). Generally, the motion must allege "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was

---

[6] The Court found that Defendant had waived the attorney-client privilege by asserting ineffective assistance of counsel claims. ECF 218.

8

so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001) (citation omitted).

## DISCUSSION

The Court will first deny the motion to amend. After, the Court will explain why it need not hold an evidentiary hearing to resolve the § 2255 motion. The Court will then deny the § 2255 motion on the merits. Last, the Court will deny a certificate of appealability and in forma pauperis status on appeal.

I.  Motion to Amend

"[A] motion to amend a § 2255 motion is generally governed by the Federal Rules of Civil Procedure." *Clark v. United States*, 764 F.3d 653, 661 (6th Cir. 2014). Civil Rule 15(a)(2) states that after a responsive pleading is filed, a party may only amend its pleading with the opposing party's written consent or with the Court's leave. The rule also states that "[t]he [C]ourt should freely give leave when justice so requires." *Id.*

To resolve whether to grant leave to amend a pleading, the Court relies on six factors: (1) "undue delay in filing"; (2) "lack of notice to the opposing party"; (3) "bad faith by the moving party"; (4) "repeated failure to cure deficiencies by previous amendments"; (5) "undue prejudice to the opposing party[;] and" (6) "futility of [the] amendment." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458–59 (6th Cir. 2001) (citation omitted). The last factor—futility of the amendment—sufficiently justifies the Court to deny leave to amend the petition. *Martin v. Assoc. Truck Lines*, 801 F.2d

9

246, 248 (6th Cir. 1986). A proposed amendment is futile if it could not survive a motion to dismiss. *Id.*

The motion sought two amendments. One, Defendant's trial counsel was ineffective because she did not object to the only victim statement that the Court heard in camera. *Phillips*, No. 2:18-cr-20128-9, ECF 205-1, PgID 3588; ECF 205-2, PgID 3601 (E.D. Mich. April 7, 2020). And two, Defendant's due process rights were violated because of the in camera victim statement. *Phillips*, No. 2:18-cr-20128-9, ECF 205-1, PgID 3588; ECF 205-2, PgID 3601 (E.D. Mich. April 7, 2020). The Court will deny both amendments as futile.

### A. *Failure to Object*

"Defendants alleging the ineffective assistance of counsel bear 'a heavy burden of proof.'" *Pough v. United States*, 442 F.3d 959, 966 (6th Cir. 2006) (quoting *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005)). To succeed on an ineffective assistance of counsel claim, Defendant must show (1) that his counsel's representation "fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

The Government reasoned that even if Defendant's trial counsel should have objected, he cannot show any prejudice from the failure to object. ECF 240, PgID 3354–55. Defendant offered no argument for why the claim is not futile. *See generally Phillips*, No. 2:18-cr-20128-9, ECF 205-1, PgID 3588; ECF 205-2, PgID 3601 (E.D. Mich. April 7, 2020). Nor could he because failing to object was not prejudicial.

10

Simply put, the Court's sentencing decision did not rely on any victim impact statement, let alone the in camera victim impact statement. ECF 157, PgID 2389–91 (under seal). The Court's soliloquy did not mention any victim impact statement or the victim who spoke in camera. *Id.* (under seal). Rather, the Court's reasoning turned on several issues completely unrelated to the specific victims: Defendant's guilt, cooperation, familial support, and early rehabilitative efforts; the sentences of similarly situated co-Defendants; and the need to punish and deter child exploitation crimes. *Id.* (under seal). Because no victim impact testimony factored into the Court's reasoning, there is no reasonable probability that Defendant's sentence would have differed had his counsel objected to the in camera victim impact statement.

What is more, the in camera victim impact statement was one out of dozens of victim impact statements that the Court had heard. *See generally* ECF 163. The Court read even more victim impact statements that the Government had attached to its sentencing memorandum. *See generally* ECF 129-2 (under seal). Thus, any influence from the *single* in camera victim impact statement was scant compared to the total influence of *all* the other victim statements presented to the Court. Because the amendment fails under the second *Strickland* prong, the Court will deny it as futile.

### B.     *Due Process Rights*

The second claim that Defendant sought is futile for two reasons. First, the claim is procedurally defaulted. Except for ineffective assistance of counsel claims, "claims not raised on direct appeal may not be raised on collateral review unless the

11

petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003) (citations omitted). Defendant did not pursue a direct appeal and so he must show cause and prejudice.

To avoid procedural default, Defendant must have "good cause for failing to" raise the claim on direct appeal and that he "would suffer actual prejudice if his averments [were] deemed precluded." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (citations omitted).[7] But Defendant cannot show cause because he knowingly and voluntarily waived his rights to appeal. *See United States v. Toth*, 668 F.3d 374, 377 (6th Cir. 2012) ("It is well settled that a defendant 'may waive any right, even a constitutional right, by means of a plea agreement.'") (quotation omitted). Nor can Defendant show prejudice given the reasons explained above in the preceding section.

Second, Defendant cannot show that the in camera victim impact statement influenced the Court's sentencing decision. *See Stewart v. Erwin*, 503 F.3d 488, 499 (6th Cir. 2007) (reaffirming that due process is violated when "a defendant is sentenced *on the basis* of materially false information") (emphasis added) (citation omitted). Although the Court read and heard from dozens of victims, no specific statement or victim ultimately factored into the Court's reasoning for why it sentenced Defendant to 396 months in prison. ECF 157, PgID 2389–91 (under seal).

---

[7] Defendant could also show "that he is actually innocent of the subject offense." *Fair*, 157 F.3d at 430 (citations omitted). But Defendant has not asserted such a defense.

12

Because no victim impact statement served as the basis of Defendant's sentence, the due process claim is futile, and the Court will deny the motion to amend.

II.   Evidentiary Hearing

Although the Court had scheduled an evidentiary hearing for the present § 2255 motion, ECF 244; 250, after further research, the Court need not hold an evidentiary hearing to resolve the *Strickland* claim about filing a notice of appeal. Admittedly, the burden for establishing a right to an evidentiary hearing is not heavy for a § 2255 motion. *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018) (citing *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). But a district court can forgo an evidentiary hearing when a defendant's allegations cannot be accepted as true because they are negated by the record, are inherently not credible, or are conclusions rather than factual statements. 28 U.S.C. § 2255(b); *MacLloyd v. United States*, 684 F. App'x 555, 559 (6th Cir. 2017) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

"The proper inquiry" for *Strickland* claims about a failure to file a notice of appeal "is to determine whether the *record* and *affidavits* suggest that one of four scenarios occurred." *Pola v. United States*, 778 F.3d 525, 534 (6th Cir. 2015) (emphasis added) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000)). Those four scenarios here are: "(1) [Defendant] expressly requested that [Ms. Dwyer] file a notice of appeal; (2) a rational defendant in [Defendant's] situation would want to file an appeal; (3) [Defendant] reasonably demonstrated to [Ms. Dwyer] that he wanted to

appeal his conviction and sentence; or (4) none of the above." *Id.* (citing Roe, 528 U.S. at 480).

The only declaration submitted to the Court shows that the first three scenarios did not occur. ECF 209-2 (Ms. Dwyer's affidavit filed under seal). Defendant submitted no signed declaration to counter Ms. Dwyer's testimony. *See generally* ECF 174; *Phillips*, No. 2:18-cr-20128-9, ECF 205; 205-1; 205-2 (E.D. Mich. April 7, 2020). His current counsel's mere allegations and his own unsworn letter to the Court about an evidentiary hearing are not enough to show a factual dispute. ECF 251; *see* 28 U.S.C. § 1746(2) (requiring that a declaration state, "'I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)'."). To confirm, the Sixth Circuit has held that "[t]he parties' *competing declarations* create a factual dispute" that must be resolved with an evidentiary hearing. *McQueen v. United States*, 205 F.3d 1341 (Table), 2000 WL 145387, at \*1 (6th Cir. 2000) (emphasis added); *see also Arredondo,* 178 F.3d at 789 ("[T]he district court should hold an evidentiary hearing" because the relevant "*affidavits* are materially inconsistent with each other.") (emphasis added).

Besides the lack of declarations or affidavits from Defendant, the record consistently showed that Defendant knowingly and voluntarily waived his right to appeal. To be sure, because the Court was the sentencing judge, the Court "may rely on [its] recollections of the [events] to assess [] credibility." *Pola*, 778 F.3d at 535 n.5 (citation omitted). Given the Court's experience, the Court does not question Ms.

14

Dwyer's recollections as accurate and truthful. In short, the Court does not have "conflicting affidavits [that] present factual disputes" and the record is clear. *Ugochukwu v. United States*, No. 17-3073, 2018 WL 3602183, at *2 (6th Cir. 2018) (citing *Pola*, 778 F.3d at 532–33, 535). As a result, the Court need not hold an evidentiary hearing to resolve the § 2255 motion.

III. <u>Motion to Vacate</u>

Defendant raised two *Strickland* claims against his trial counsel. One, his counsel "did not inform th[e] Court of the full scope of his assistance" to the Government and so his sentence was at odds "with the substantial assistance he provided." ECF 174, PgID 2749 (under seal). Two, his trial counsel failed to file a notice of appeal after his sentencing. *Id.* at 2750–52 (under seal). The Court will deny both in turn.

### A. *Defendant's Cooperation*

To address the first *Strickland* prong, the Court must "strongly presume" that Ms. Dwyer "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690. "Working from this presumption, the [C]ourt should resist 'the temptation to rely on hindsight.'" *Poulsen v. United States*, 717 F. App'x 509, 514 (6th Cir. 2017) (quoting *Carson v. United States*, 3 F. App'x 321, 324 (6th Cir. 2001)). The Court must judge Ms. Dwyer's performance based "an objective standard of reasonableness." *United States v. Arny*, 831 F.3d 725, 731 (6th Cir. 2016) (quotation omitted).

15

Defendant cannot overcome the strong presumption that Ms. Dwyer rendered effective assistance. For one, Defendant offered no argument and pointed to no facts that showed Ms. Dwyer failed to lodge an effective argument about Defendant's assistance to the Government. *See* ECF 174, PgID 2749 (under seal). For another, his counsel offered effective arguments at sentencing about his cooperation. ECF 157, PgID 2371–74 (under seal). The Court even conceded that Defendant "should get credit for the substantial assistance that he provided in identifying, and . . . bringing in eight people in the [Bored] group." *Id.* at 2390 (under seal). Consider too that Defendant received *more* credit for his cooperation than a similarly situated co-Defendant. *Id.* (under seal); *see also id.* at 2357–58 (under seal) (sentencing of Bret Massey). It follows that Ms. Dwyer's arguments at sentencing did not fall "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

Defendant also failed to show prejudice under the second *Strickland* prong. For a sentencing challenge, the second prong requires Defendant to show "a reasonable probability that, but for counsel's errors, [his] sentence would have been different." *Weinberger v. United States*, 268 F.3d 346, 352 (6th Cir. 2001) (citing *Strickland*, 466 U.S. at 694). Again, Defendant offered no argument and pointed to no facts that showed any chance his sentence would have differed. *See* ECF 174, PgID 2749 (under seal). Besides, the Court chose not to credit Defendant's cooperation more because the 360-month prison sentence recommendation was "too steep." ECF 157, PgID 2390 (under seal). As the Court put it, "seven years of credit as opposed to ten" years, would better serve other interests of justice such as punishment and deterrence. *Id.* at 2390–

16

91 (under seal). Put differently, more details about Defendant's cooperation would not have altered his sentence. *See Sears v. Upton*, 561 U.S. 945, 954 (2010) (per curiam) ("[T]here is no prejudice when the new mitigating evidence 'would barely have altered the sentencing profile presented' to the decisionmaker." (quoting *Strickland*, 466 U.S. at 700)). The Court will therefore deny the first *Strickland* claim under both prongs.

### B. Notice of Appeal

"[C]ounsel has a constitutionally imposed duty to consult with the [D]efendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal," or (2) that a "defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe*, 528 U.S. at 480. If either circumstance is present, then counsel's performance falls below the objective standard of reasonableness. *Id.* Defendant cannot show the first *Strickland* prong is plausible because neither circumstance is present.

Ms. Dwyer "had no duty to consult with [Defendant] about an appeal because his guilty plea, below-Guideline[] sentence, and appeal waiver indicated that a rational defendant would not have wanted to appeal." *Eisley v. United States*, No. 20-1725, ECF 15-2, PgID 2–3 (6th Cir. Feb. 23, 2021) (Daughtrey, J.) (order denying certificate of appealability application).

Plus, Defendant never "reasonably demonstrated" to Ms. Dwyer that he wanted to appeal. *Roe*, 528 U.S. at 480. Defendant submitted no signed declaration to support the present *Strickland* claim. *See generally* ECF 174; *Phillips*, No. 2:18-cr-

17

20128-9, ECF 205; 205-1; 205-2 (E.D. Mich. April 7, 2020). And for the reasons stated above, his current counsel's mere allegations are not enough to conjure up a factual dispute about whether Defendant reasonably demonstrated a desire to appeal. *See* 28 U.S.C. § 1746(2); *Pola*, 778 F.3d at 534.

In contrast, Ms. Dwyer submitted a signed declaration under the penalty of perjury that detailed her discussions with Defendant. ECF 209-2 (under seal). She affirmed that "[a]t no time after [Defendant's] sentencing hearing . . . did [Defendant] or any other individual acting on his behalf ask [her] to file a notice of appeal to initiate a direct appeal in this matter." *Id.* at 3124 (under seal). She also recalled that Defendant's mother "never discussed the filing of a notice of direct appeal, [or] instructed that [Ms. Dwyer] file a notice." *Id.* at 3127 (under seal). At bottom, no evidence suggests that Defendant "reasonably demonstrated to counsel that he was interested in appealing." *Roe*, 528 U.S. at 480. The Court will therefore deny the *Strickland* claim on the first prong. Because all the claims lack merit, the Court will dismiss the § 2255 motion with prejudice.

IV. Certificates of Appealability and Proceeding In Forma Pauperis on Appeal

To appeal the Court's decision, Defendant must obtain a certificate of appealability. To obtain a certificate of appealability, Defendant must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Thus, Defendant must show that reasonable jurists could debate whether the Court should have resolved the § 2255 motion in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v.*

18

*McDaniel*, 529 U.S. 473, 483–84 (2000). Jurists of reason would not debate the Court's denial of Defendant's motion. The Court will therefore deny certificates of appealability.

The Court will also deny Defendant leave to appeal in forma pauperis because he cannot take an appeal in good faith. *See* Fed. R. App. P. 24(a).

### ORDER

**WHEREFORE**, it is hereby **ORDERED** that the motion to vacate sentence under 28 U.S.C. § 2255 in the 17-cr-20632-5 case [174] is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the motion to vacate sentence under 28 U.S.C. § 2255 in the 18-cr-20128-9 case [173] is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that certificates of appealability are **DENIED**.

**IT IS FURTHER ORDERED** that leave to proceed in forma pauperis on appeal is **DENIED**.

**IT IS FURTHER ORDERED** that the motion to amend in the 18-cr-20128-9 case [205] is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court must **CLOSE** civil case number 2:19-cv-12221.

**IT IS FURTHER ORDERED** that the Clerk of the Court must **CLOSE** civil case number 2:19-cv-12222.

**SO ORDERED.**

                                                  s/ Stephen J. Murphy, III
                                                  STEPHEN J. MURPHY, III
                                                  United States District Judge

Dated: July 12, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 12, 2022, by electronic and/or ordinary mail.

                                                  s/ David P. Parker
                                                  Case Manager